# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TYESHAWN D. COHENS,

       Petitioner,

    v.                                Case No. 05-C-520

CATHERINE J. FARREY,

       Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

The petitioner, Tyeshawn D. Cohens ("Cohens"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his confinement at the Green Bay Correctional Institution where the respondent, Catherine J. Farrey, is warden. Cohens was convicted of possession with intent to deliver more than 100 grams of cocaine, and delivering fewer than 5 grams of cocaine, in violation of Wis. Stat. §§ 961.41(1m)(cm)5 and 961.41(1)(cm)1, following a jury trial in the Eau Claire County Circuit Court. On March 18, 2002, Cohens was sentenced to seventeen years of initial confinement, to be followed by ten years of extended supervision on the possession with intent to deliver count, and to ten years of initial confinement to be followed by ten years of extended supervision for the delivery of cocaine count. The sentences were to run concurrently with one another.

After a successful postconviction motion challenging his sentence for delivery of fewer than five grams of cocaine, Cohens was resentenced on May 13, 2003. Cohens' sentence as to this

count was changed from ten years of extended supervision to five years of extended supervision. All other aspects of Cohens' sentence remained the same.

Cohens appealed his conviction, and in a decision dated March 2, 2004, the Wisconsin Court of Appeals affirmed his conviction. Cohens' petition for review in the Wisconsin Supreme Court was denied on May 12, 2004, and Cohens did not file a petition for certiorari in the United States Supreme Court. Cohens thereafter filed his federal habeas petition on May 10, 2005.

In August 2005, Cohens filed a motion for postconviction relief with the Eau Claire County Circuit Court pursuant to Wis. Stat. § 974.06. On September 1, 2005, before the parties' briefing on the federal habeas corpus petition was completed, and although represented by counsel, Cohens filed a pro se motion seeking to have his habeas petition dismissed without prejudice, or in the alternative, stayed in abeyance so that Cohens could pursue his remedies under Wis. Stat. § 974.06 in the Wisconsin state courts. Cohens sought leave to present several new claims to the state court and then return to this court and seek to amend his habeas corpus petition to include such claims. On January 20, 2006, this court granted in part and denied in part Cohens' motion, and ordered that Cohens' petition for a writ of habeas corpus be stayed in abeyance until such time as Cohens had exhausted in Wisconsin state court those claims which he had asserted in his § 974.06 postconviction motion.

On July 5, 2006, the Wisconsin Court of Appeals affirmed the decision of the circuit court denying Cohens' Wis. Stat. § 974.06 motion without a hearing. Cohens' petition for review in the Wisconsin Supreme Court was denied on September 11, 2006.

On October 26, 2006, Cohens filed an amended petition for writ of habeas corpus. The claims presented in Cohens' amended petition have now been fully briefed by the parties and are

2

ready for resolution. For the reasons which follow, Cohens' petition for a writ of habeas corpus will be denied and this action will be dismissed.

Cohens' amended habeas petition raises six claims: (1) that the trial court failed to follow the correct procedure in allowing past evidence of Cohens' drug activity; (2) that the trial court gave improper jury instructions; (3) that the trial court unduly restricted cross examination by not permitting the defense to inquire into the minimum penalties faced by the cooperating co-defendant in cases dismissed by the State; (4) that the prosecutors failed to provide complete discovery regarding its witnesses, depriving Cohens of his right to confront and cross-examine, and forcing him to choose between a speedy trial and a fair one; (5) that the State presented insufficient evidence to convict Cohens on the charge of delivery of cocaine; and (6) that Cohens received ineffective assistance of counsel at the trial and appeal stages. The respondent concedes that Cohens has exhausted his state court remedies with respect to the issues raised in his habeas petition and that the petition was timely filed.

## II. FACTS

The following is a summary of the facts underlying Cohens' convictions as set forth by the Wisconsin Court of Appeals.

¶ 2 The State introduced ninety-six grams of cocaine into evidence, relying on other witnesses to establish that Cohens possessed more than 100 grams. The State presented several witnesses, some of them co-conspirators, who testified that on separate occasions they saw Cohens possess large amounts of cocaine that they estimated to be a kilogram and a half kilogram. One of those witnesses, Hollie Peterson, entered into a plea agreement two days before the trial began and testified against the other defendants. Because she belatedly became a State's witness, her plea agreement and her prior criminal record were disclosed to the defense the day before trial. The court offered to postpone the trial, but Cohens elected to proceed.

3

(Resp.'s Br., Ex. V at ¶ 2 (Wisconsin Court of Appeals Decision dated July 5, 2006, *available at* 2006 Wisc. App. LEXIS 594) [hereinafter "July 5 Decision"].)

¶ 5 [Hollie] Peterson's testimony regarding Cohens' 2000 cocaine dealing comprised three pages of a several-hundred-page trial transcript. Peterson recounted that she met Cohens through a friend in Minnesota and bought cocaine from him over a period of months in 2000. Peterson testified that during that time, she initially purchased one-fourth ounce of cocaine from Cohens every two to three days and later increased that amount to one-half ounce. In addition to this challenged other acts evidence, however, Peterson testified regarding her drug-related contact with Cohens during the period of the charged offenses. Three other witnesses likewise testified about their observations of Cohens' role in a crack cocaine distribution ring.

(Answer, Ex. F at ¶5 (Wisconsin Court of Appeals Decision dated March 2, 2004, *available at* 2004 Wisc. App. LEXIS 186) [hereinafter "March 2 Decision"].)

¶ 6 Sherri Mitchell testified that on six or seven occasions she made arrangements for Northern to deliver cocaine to Madison and Cohens. Mitchell also testified that she saw Cohens with one kilogram of cocaine and observed Cohens cook cocaine at her residence on ten to twenty occasions. Mitchell additionally noted that she observed Cohens deliver cocaine to people from her residence numerous times and that she, in fact, obtained cocaine from Cohens to sell elsewhere. Adam Rindal testified that he had purchased crack cocaine from the co-defendants, including Cohens. Finally, Jennifer Ellefson testified that she observed Cohens join Banks and Madison in cooking cocaine powder on one or two occasions. Ellefson also observed Cohens cooking cocaine on his own at Mitchell's house.

. . .

¶ 9 On direct examination, Peterson acknowledged that she had previously been adjudicated delinquent or convicted on eleven occasions. The jury heard that Peterson had initially been charged as a co-defendant with Cohens. Peterson acknowledged, however, that in exchange for her no contest plea to a charge of delivery of more than 100 grams of cocaine, the State had agreed to dismiss additional counts and cases against her. The jury also heard that as part of her plea agreement, the State would recommend five years' initial confinement followed by three years' extended supervision.

¶ 10 On cross-examination, Peterson acknowledged she had initially been charged with fourteen counts and knew she originally faced a maximum exposure of 390 years. Additionally, Peterson testified that four separate cases, with seven additional counts ranging from bail jumping to delivery of cocaine had been

4

dismissed. Finally, Peterson conceded that in addition to being a drug user, she had sold drugs on hundreds, if not thousands, of occasions in Eau Claire.

(March 2 Decision at ¶¶ 6, 9, 10.)

¶ 3 The State's evidence on the delivery charge consisted of an informant who bought cocaine from Cohens. The informant wore a wire, and the transaction was tape-recorded and played for the jury. Peterson identified Cohens's voice on the tape.

(July 5 Decision at ¶ 3.)

## III.  STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("'[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'") (quoting *Hass v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990)).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).  A federal habeas court may not rely on its own precedent or that of

5

circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Connor v. McBride*, 375 F.3d 63, 649 (7th Cir. 2004) (citation omitted).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

The AEDPA's deferential standard of review only applies where a state court has adjudicated a petitioner's claim on the merits. *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005); *Braun v. Powell*, 227 F.3d 908, 916 (7ht Cir. 2000). Where there is no state court decision on the merits, a

federal habeas court applies the standard of 28 U.S.C. § 2243, and disposes of the petitioner's claim "as justice and law require." *Id.* at 917.

That having been said, before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (internal quotations omitted). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner

Case 2:05-cv-00520-WEC   Filed 08/06/07   Page 7 of 30   Document 55

failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray*, 477 U.S. at 496). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

8

## IV. DISCUSSION

### A. Allowance of Past Evidence of Cohens' Drug Activity

Cohens argues that the trial court's admission of prior acts testimony was a violation of his right to due process. Specifically, Cohens contends that the testimony of Hollie Peterson ("Peterson") regarding her past drug transactions with Cohens lacked any probative value as to the crime charged, and was substantially prejudicial and was not harmless error. (Pet.'s Original Br. at 3-4.)

"[T]he violation of a state rule of evidence is not a denial of due process." *Watkins v. Meloy* 95 F.3d 4 (7th Cir. 1996). "Something worse than a garden-variety violation of the standard of 404(b) must be shown to cross the constitutional threshold." *Young Soo Koo v. McBride*, 124 F.3d 869, 874 (7th Cir. 1997). "When we review a petitioner's submission concerning a state court's evidentiary ruling based on a state rule of evidence, we do not consider the correctness of that court's determination based on the state's evidentiary laws." *Id.* Rather, the court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68,(1991).

The United States Supreme Court has held that while "[w]e do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence," the constitution might be offended if an evidentiary ruling "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941); *see also Estelle*, 502 U.S. at 75 (1991). Again with respect to state evidentiary principles, the Supreme Court has held that "[c]ases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But it has never been thought that such cases

9

establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (citations omitted).

Therefore, this court's duty is to review the Wisconsin Court of Appeals' decision under the deferential standard of 28 U.S.C. § 2254(d)(1) to determine whether it was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts. *See Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997) (applying the deferential standard of § 2254(d)(1) even where the state court's discussion of the constitutional issue at hand was "perfunctory").

As described by the Wisconsin Court of Appeals, Hollie Peterson testified at Cohens' trial that "she met Cohens through a friend in Minnesota and bought cocaine from him over a period of months in 2000 . . . during that time, she initially purchased one-fourth ounce of cocaine from Cohens every two to three days and later increased that amount to one-half ounce." (March 2 Decision at ¶ 5.)

Cohens argues that Peterson's testimony, which recounted small cocaine purchases that were not temporally related to the crime with which Cohen was charged, did not support a finding that Cohens had the ability to produce large quantities of cocaine for sale or distribution. Cohens further argues that this was not a harmless error because the jury was misled into thinking that the weight of drugs involved during transactions in 2000 could be used to find that Cohens was involved in over 100 grams of cocaine at the time of the crime for which he was convicted. According to Cohens, and as noted in the trial transcript, after the jury expressed hesitation as to whether one of Cohens' co-defendants was involved in 100 grams of cocaine, the trial court instructed the jury as follows:

Your verdict must be unanimous and if you are unable to unanimously agree as to one of the defendants that the evidence established beyond a reasonable doubt that he possessed with intent to deliver more than one hundred grams, then I would ask you to fill in whatever amount you can unanimously agree the evidence established beyond a reasonable doubt was possessed with intent to deliver.

(Answer, Ex. P at 116; Pet.'s Original Br. at 4.)

Cohens argues that this unconstitutionally shifted the burden of proving the charges from the State to the jury, and potentially caused confusion and improper speculation among the jury.

The Wisconsin Court of Appeals determined that the trial court's admission of Peterson's testimony regarding Cohens' past actions was harmless error. The court declined to address whether the evidence was admissible.

The test for harmless error is 'whether there is a reasonable possibility that the error contributed to the conviction.' *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). A reasonable possibility is a 'possibility sufficient to undermine our confidence in the conviction.' *State v. Williams*, 2002 WI 58, P50, 253 Wis. 2d 99, 644 N.W.2d 919 (citations omitted).

Here, Peterson's testimony regarding Cohens' 2000 cocaine dealing comprised three pages of a several-hundred-page trial transcript. Peterson recounted that she met Cohens through a friend in Minnesota and bought cocaine from him over a period of months in 2000. Peterson testified that during that time, she initially purchased one-fourth ounce of cocaine from Cohens every two to three days and later increased that amount to one-half ounce. In addition to this challenged other acts evidence, however, Peterson testified regarding her drug-related contact with Cohens during the period of the charged offenses. Three other witnesses likewise testified about their observations of Cohens' role in a crack cocaine distribution ring.

Sherri Mitchell testified that on six or seven occasions she made arrangements for Northern to deliver cocaine to Madison and Cohens. Mitchell also testified that she saw Cohens with one kilogram of cocaine and observed Cohens cook cocaine at her residence on ten to twenty occasions. Mitchell additionally noted that she observed Cohens deliver cocaine to people from her residence numerous times and that she, in fact, obtained cocaine from Cohens to sell elsewhere. Adam Rindal testified that he had purchased crack cocaine from the co-defendants, including Cohens. Finally, Jennifer Ellefson testified that she observed Cohens join Banks and Madison in cooking cocaine powder on one or two occasions. Ellefson also observed

11

Cohens cooking cocaine on his own at Mitchell's house. We conclude that evidence of Cohens' 2000 drug dealing had a de minimus effect on the jury because of the overwhelming evidence of his guilt. *See Dyess*, 124 Wis. 2d at 541-42.

(March 2 Decision at ¶¶ 4-6.)

There are no factual determinations at issue here. Therefore, this court's duty is to determine whether the court of appeals' decision that the admission of other acts evidence was harmless error resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Under the applicable Supreme Court standard, "[a] constitutional error is harmless when 'it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The court "may not grant respondent's habeas petition, however, if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state] Court of Appeals applied harmless-error review in an 'objectively unreasonable' manner." *Id*.

As noted above, a state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Connor*, 375 F.3d at 649. The facts of the case demonstrate that the court of appeals' conclusion that any alleged error in admitting other acts evidence was harmless was not objectively unreasonable. Cohens was convicted primarily on the strength of Peterson's testimony regarding her drug-related contact with him during the period of the charged offenses, and on the strength of testimony from three other witnesses who testified about their observations of Cohens' role in a crack cocaine distribution ring. The Wisconsin Court of Appeals' conclusion that Peterson's testimony regarding small drug transactions in 2000 had a *de*

12

*minimus* effect on the jury given the other testimony available is consistent with the facts of the case, and therefore not unreasonable.

Moreover, Cohens' argument that Peterson's testimony caused confusion and improper speculation with regards to the issue of whether Cohens was involved with over 100 grams of cocaine is not supported by the facts of the case. Peterson's testimony involved small amounts of cocaine, well under the 100 grams necessary for a conviction. On the other hand, another witness, Sherri Mitchell, testified that she saw Cohens with one kilogram of cocaine, and observed Cohens cook cocaine at her residence on ten to twenty occasions. Simply stated, the evidence does not indicate that testimony regarding small transactions in 2000, in combination with current evidence that Cohens was in possession of well over 100 grams of cocaine, would influence a jury's determination as to whether Cohens was involved with more than 100 grams of cocaine.

In sum, I cannot say that the court of appeals applied harmless-error review in an objectively unreasonable manner. Cohens is therefore not entitled to habeas relief based on the admission of the other acts evidence.

## B. Improper Jury Instruction

Relatedly, Cohens argues that the jury instruction discussed above regarding whether one of Cohens' co-defendants was involved with more than 100 grams of cocaine violated the Due Process Clause of the Fourteenth Amendment and his Sixth Amendment right to a jury trial. Cohens argues that the jury instruction unconstitutionally shifted the burden of proving the charges from the State to the jury, and potentially misled the jury into thinking that the State did not have to prove the essential element of possession of more than 100 grams to convict. Moreover, Cohens contends that

13

this jury instruction turned the case into a lesser-included charge case without a lesser-included charge instruction. (Pet.'s Br. at 10-11.)

In order to determine if a jury instruction was defective, "we must determine whether the jury instructions in [this] case, read as a whole, failed to instruct the jury in an element of [the crime] thereby relieving the State of its obligation under the Due Process Clause to prove beyond a reasonable doubt every element of the offense." *Canaan v. McBride*, 395 F.3d 376, 388 (7th Cir. 2005) (citing *In re Winship*, 397 U.S. 358 (1970)).

The initial inquiry regarding allegedly defective jury instructions "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). When answering this inquiry, "instructions 'must be considered . . . as a whole . . . [and] ambiguous instructions should be considered under the 'reasonable likelihood' standard." *Garth v. Davis*, 470 F.3d 702, 711 (7th Cir. 2006). The "reasonable likelihood" standard asks if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

The Wisconsin Court of Appeals determined that Cohens' challenge to the jury instruction had no merit.

> Cohens's challenge to the jury instruction has no merit because the instruction did not affect the verdict. The challenged instruction tells the jury what to do if it could not agree that he possessed more than 100 grams of cocaine with intent to deliver. The jury found that he did possess more than 100 grams. Any defect in the alternative instruction is irrelevant. Cohens's motion does not identify any statement in the instruction that might arguably confuse any juror.

(July 5 Decision at ¶ 8.)

14

The Wisconsin Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. The standard of review applied by the court of appeals is essentially the same as that required by Supreme Court precedent. The court of appeals looked to see if the jury instruction affected the verdict, which is consistent with the standard set forth in *Estelle* ("whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.").

The court of appeals had a reasonable basis to conclude that the jury instruction did not affect the verdict. The court of appeals found that the alternative instruction only addressed what would happen if the jury did not agree that a defendant possessed more than 100 grams of cocaine, and that this situation did not apply to Cohens, who was ultimately convicted of possessing more than 100 grams of cocaine. There is no contention that the original instruction failed to instruct the jury on the required elements of possession of over 100 grams of cocaine, or that the jury was unable to agree that Cohens possessed more than 100 grams of cocaine such that the new jury instruction became applicable. Indeed, the need for the new instruction arose because the jury was unable to unanimously agree whether, with respect to one particular co-defendant, the specific element of "over 100 grams of cocaine" was established beyond a reasonable doubt. As such, the alternate jury instruction did not affect the verdict, and thus did not so infect the entire trial such that the resulting conviction violated due process.

Furthermore, it is unclear how the alternate jury instruction could have confused the jury into thinking that the State did not have to prove an essential element of possession of more than 100 grams to convict. The jury instruction stated that "if you are unable to unanimously agree as to one of the defendants that the evidence established beyond a reasonable doubt that he possessed with

15

intent to deliver more than one hundred grams, then I would ask you to fill in whatever amount you can unanimously agree the evidence established beyond a reasonable doubt was possessed with intent to deliver." Such being the case, the jury was still instructed that possession with intent to deliver more than one hundred grams must be proven beyond a reasonable doubt.

As a result, I cannot say that the jury instruction so infected the entire trial that the resulting conviction violated Cohens' due process rights. Cohens is therefore not entitled to habeas relief based on this claim.

## C. Undue Restriction of Cross Examination

Cohens argues that the trial court's denial of cross examination regarding all of the sentences faced by Peterson violated Cohens' Sixth Amendment right to confront witnesses. Cohens argues that it was not harmless error to deprive the jury of knowledge of the potential penalties Peterson had been facing because the jury could have had a significantly different impression of Peterson's credibility had the jury been told about these potential penalties. (Pet.'s Original Br. at 5-6.)

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to be confronted by the witnesses against him. U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The purpose of the confrontation clause is

> to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

*Davis*, 415 U.S. at 315-16 (quoting 5 J. Wigmore, Evidence § 1395 p. 123 (3d ed. 1940)). Yet, "trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice,

16

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Indeed, evidentiary protections based on legitimate state interests may curtail the right to cross-examine without violating the confrontation clause. *Davis*, 415 U.S. 318-20. At the same time, however, the policy behind finding a confrontation clause violation over the state evidentiary exclusions relies on the desire to "assure 'the accuracy of the truth-determining process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (quoting *Dutton v. Evans,* 400 U.S. 74, 89 (1970)).

Moreover, "[t]he right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights." *Washington v. Texas*, 388 U.S. 14, 18 (1967). Indeed, in *Washington* the court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's duty to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id*. at 19.

The Wisconsin Court of Appeals determined that Cohens' challenge to the restriction on cross-examination had no merit because the trial court did not erroneously exercise its discretion.

> The right to confrontation includes the right to cross-examine adverse witnesses to expose potential bias. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986). Although a defendant is entitled to significant latitude regarding the extent and scope of an inquiry to explicate a witness's bias, it is the trial court's duty to curtail any undue prejudice by limiting cross-examination, including the exclusion of bias evidence that would divert the trial to extraneous matters or confuse the jury by placing undue emphasis on collateral issues. *State v. McCall*, 202 Wis. 2d 29, 41-42, 549 N.W.2d 418 (1996).

17

Here, the trial court allowed sufficient latitude on cross-examination to adequately permit Cohens to test Peterson's credibility and properly excluded the proffered evidence on grounds that its prejudicial value far outweighed its probative value. On direct examination, Peterson acknowledged that she had previously been adjudicated delinquent or convicted on eleven occasions. The jury heard that Peterson had initially been charged as a co-defendant with Cohens. Peterson acknowledged, however, that in exchange for her no contest plea to a charge of delivery of more than 100 grams of cocaine, the State had agreed to dismiss additional counts and cases against her. The jury also heard that as part of her plea agreement, the State would recommend five years' initial confinement followed by three years' extended supervision.

On cross-examination, Peterson acknowledged she had initially been charged with fourteen counts and knew she originally faced a maximum exposure of 390 years. Additionally, Peterson testified that four separate cases, with seven additional counts ranging from bail jumping to delivery of cocaine had been dismissed. Finally, Peterson conceded that in addition to being a drug user, she had sold drugs on hundreds, if not thousands, of occasions in Eau Claire.

In excluding the proffered evidence regarding the maximum penalty for the dismissed cases, as well as the presumptive minimum penalty, the trial court noted that "the jury is not supposed to know the possible affect [sic] of their verdict and … if we get into all of these maximums and presumptive minimums and the substantial potential fines … that could influence their decision as it reflects the remaining defendants." The court further stated: "I'm really troubled … talking about penalties because the jury is not to concern themselves with penalties." *See State v. Muentner*, 138 Wis. 2d 374, 391, 406 N.W.2d 415 (1987) (Wisconsin courts do not generally disclose penalties to a jury.).

The trial court expressed concern that additional cross-examination on the penalties issue would be cumulative, confuse the issues and waste time. Cohens had already demonstrated that Peterson bargained away "potentially three hundred, four hundred years" and the State would "ask for five years of prison and three years' supervision." Moreover, because the jury knew that Peterson had bargained away approximately 400 years of exposure in the present case, there was little or no probative value in telling the jury about the total number of years bargained away on the dismissed cases. With respect to the presumptive minimum penalty, efforts to explain to a jury that an offense carries a minimum penalty that is merely discretionary could likewise confuse the jury. We conclude the trial court allowed Cohens to cross-examine Peterson regarding her plea agreement in a manner that exposed her bias and comported with his confrontation rights.

(March 2 Decision at ¶¶ 8-12.)

18

The Wisconsin Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. As noted by the Wisconsin Court of Appeals, and consistent with Supreme Court precedent, the trial court has wide latitude, insofar as the confrontation clause is concerned, to impose reasonable limits on cross examination. The Wisconsin Court of Appeals analyzed the actions taken by the trial court in limiting cross examination, as well as the reasoning of the trial court, and concluded that the trial court allowed cross examination in a manner that exposed Peterson's bias and comported with Cohens' confrontation rights. Specifically, the Wisconsin Court of Appeals noted that the trial court decided to limit cross examination due to its concerns that additional cross examination would confuse the jury and waste time. The reasons given by the trial court in limiting cross examination were all consistent with established Federal law.

Moreover, the trial court's decision to limit cross examination is supported by the facts presented during the trial. The jury was already aware that Peterson had bargained away almost 400 years of potential prison time, which the trial court reasonably determined would expose her potential bias to the jury. It is unclear what the probative value would be of providing the jury with additional information regarding minimum sentences or maximum penalties faced for other dismissed cases. As a result, I cannot say that the limitation on cross examination caused the trial to be "so infused with unfairness" that Cohens was denied due process of law. Cohens is therefore not entitled to habeas relief based on the limitation of cross examination of Peterson.

### D. Failure to Provide Complete Discovery

Cohens argues that the prosecution failed to provide complete discovery regarding new witnesses, causing him to be unable to properly investigate and prepare for cross examination.

Specifically, Cohens points to the prosecution's failure to provide him with the complete details of its deal with Peterson, oral statements Peterson made to investigators after she signed her written statement, and complete criminal records of the prosecution's witnesses. Cohens contends that as a result of this failure to provide discovery, he was deprived of his Sixth Amendment right to cross examine witnesses used against him. (Pet.'s Br. at 21-22.)

The Wisconsin Court of Appeals addressed Cohens' argument as follows:

> The State introduced ninety-six grams of cocaine into evidence, relying on other witnesses to establish that Cohens possessed more than 100 grams. The State presented several witnesses, some of them co-conspirators, who testified that on separate occasions they saw Cohens possess large amounts of cocaine that they estimated to be a kilogram and a half kilogram. One of those witnesses, Hollie Peterson, entered into a plea agreement two days before the trial began and testified against the other defendants. Because she belatedly became a State's witness, her plea agreement and her prior criminal record were disclosed to the defense the day before trial. The court offered to postpone the trial, but Cohens elected to proceed.

> The State's evidence on the delivery charge consisted of an informant who bought cocaine from Cohens. The informant wore a wire, and the transaction was tape-recorded and played for the jury. Peterson identified Cohens's voice on the tape.

> The trial court can deny a postconviction motion without a hearing if the motion fails to raise a question of fact, presents only conclusory allegations, or if the record conclusively shows that the defendant is not entitled to relief. *See State v. Allen*, 2004 WI 106, P12, 274 Wis. 2d 568, 682 N.W.2d 433. The motion must identify who, what, when, where, why and how for the court to meaningfully assess a defendant's claims. *Id.*, P23.

> Cohens's motion is not sufficient to require a hearing regarding the alleged discovery violations. The witnesses' plea agreements, the prosecutor's concessions and the number of the witnesses' prior convictions were presented to the jury. The motion does not identify any specific additional information that more timely disclosure would have revealed. Cohens argues that the State should have disclosed its witnesses' criminal records, not just the number of convictions. He contends that he would have been able to present other acts evidence regarding the State's witnesses because other drug convictions would be relevant to show identity and motive. The State's witnesses admitted their involvement in drug trafficking. Proving

20

the co-conspirators' history of drug transactions with prior convictions does not exonerate Cohens.

(July 5 Decision ¶¶ 2-5.)

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972). "'[T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *United States v. Bagley*, 473 U.S. 667, 675-76 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976).

The Wisconsin Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. The court of appeals denied Cohens' motion because it found that the discovery materials sought by Cohens did not exonerate him, and that Cohens did not indicate the specific additional information that more timely disclosure would have revealed. As such, the court of appeals' decision was consistent with the Supreme Court's holding that nondisclosure of evidence does not violate due process if the evidence is not material to guilt.

Moreover, the court of appeals' finding was a reasonable application of Federal law. As noted by the court of appeals, the jury was presented with the witnesses' plea agreements, the prosecutor's concessions, and the witnesses' number of prior convictions. The witnesses also

21

admitted their drug trafficking history. Such being the case, the witnesses' potential bias or lack of credibility was thoroughly presented to the jury through the witnesses' own admissions of drug trafficking and their disclosed plea agreements. It is unclear how more timely or detailed disclosure of information regarding the witnesses' plea agreements or drug trafficking history would have had a material impact on Cohens' ability to cross examine them.

Cohens also argues that he was forced to choose between his constitutional right to a speedy trial and his right to a fair trial with access to all of his constitutionally and statutorily required discovery. (Pet.'s Br. at 23.) Specifically, Cohens points to the fact that Peterson's plea agreement and prior criminal record were disclosed to the defense the day before trial, and that the trial court presented Cohens with the choice of either proceeding or delaying the trial for two months.

The Wisconsin Court of Appeals addressed this argument as follows

> Cohens's argument that he was forced to choose between a speedy trial and a fair trial is not supported by the record. His motion does not identify any legitimate discovery violation that affected the trial. In addition, he never requested a speedy trial and chose to proceed with the trial upon being informed of Peterson's decision to testify against him.

(July 5 Decision at ¶ 6).

As noted above, there is no indication that the alleged impaired ability of Cohens to cross examine Peterson had any effect on the outcome of the trial. The jury was aware of the details of Peterson's plea agreement and prior criminal record, and Cohens has not specified what additional information could have been used on cross examination to fatally undermine Peterson's credibility. Simply stated, Cohens has not specified how his trial was affected by the late disclosure of Peterson's plea agreement and prior criminal record.

To be sure, the Supreme Court has found in certain circumstances that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968). However, as discussed above, Cohens was not denied his Sixth Amendment right to cross examine witnesses used against him as a result of the timing of the disclosure of Peterson as a witness. Such being the case, Cohens did not have to surrender the right to a fair trial in order to assert his right to a speedy trial. Moreover, as noted by the court of appeals, Cohens never asserted his right to a speedy trial.

Given the foregoing, I cannot say that the prosecution's alleged failure to timely provide discovery materials or disclose the witnesses' criminal records caused the trial to be "so infused with unfairness" that Cohens was denied due process of law. Cohens is therefore not entitled to habeas relief based on his claim that the prosecution failed to provide complete disclosure of all discovery materials.

**E. Insufficient Evidence**

Cohens argues that the conclusion that he actually delivered cocaine is supported only by uncorroborated testimony. Thus, Cohens contends that there was insufficient evidence that he directly delivered the cocaine. Moreover, Cohens argues that the trial court erred in admitting irrelevant, highly prejudicial evidence of his prior drug dealings.[1] (Pet.'s Br. at 24-25.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

---

[1]It is unclear whether Cohens is referring to Peterson's testimony, or to other testimony regarding his prior drug dealing. In his brief and amended petition, Cohens only refers specifically to Peterson's testimony regarding their past drug dealings. Cohens also does not discuss this "other acts" evidence in his amended habeas petition in his discussion of the insufficiency of the evidence claim.

23

crime with which he is charged." *In re Winship*, 397 U.S. at 364. Once an accused has been convicted and reviewing courts uphold that conviction, a federal court engaged in collateral review of the state conviction must make the following determination: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the responsibility for resolving conflicts in the testimony, for weighing the evidence and for drawing reasonable inferences from basic facts to ultimate facts, is that of the trier of fact. *Ford v. Ahitow*, 104 F.3d 926, 937-38 (7th Cir. 1997). "Therefore, the role of an appellate court is quite limited; it cannot reweigh the evidence or substitute its judgment for that of the factfinder." *Id*. (citing *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996)).

On collateral review, the court is required to accept "the authority of the factfinder to make conclusions from the evidence." *Id*. at 938 (quoting *Schlup v. Delo*, 513 U.S. 298, 333 (1995) (O'Connor, J., concurring)). "[T]he assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. The *Jackson* court's "use of the word 'could' focuses the inquiry on the power of the trier of the fact to reach its conclusion." *Ford*, 104 F.3d at 938 (quoting *Schlup*, 513 U.S. at 330). The *Schlup* court "characterized the essence of *Jackson*: [u]nder Jackson the mere existence of sufficient evidence to convict would be determinative of petitioner's claim." *Id*.

The Wisconsin Court of Appeals addressed Cohens' argument as follows:

The State's evidence on the delivery charge consisted of an informant who bought cocaine from Cohens. The informant wore a wire, and the transaction was tape-recorded and played for the jury. Peterson identified Cohens's voice on the tape.

24

Cohens's motion also fails to establish that evidence against him should not have been admitted. His co-conspirators' estimates of the weight of cocaine he possessed were admissible. They participated in cocaine trafficking and saw him with as much as ten times the 100 grams he was convicted of possessing. The motion does not establish any basis for precluding their testimony. Cohens also complains that the prosecutor utilized photographs of him and other drug dealers. The prosecutor used the photos to identify parties, particularly because they used nicknames. Cohens's motion does not establish any prejudicial effect from the prosecutor's use of the photo and does not state why they would be inadmissible.

. . .

Finally, Cohens's motion does not establish any basis for challenging the sufficiency of the evidence on the cocaine delivery charge. Several witnesses testified about their activities with Cohens on that date. Cohens argues that their testimony was inconsistent with police reports that were not introduced at trial. The police reports refer to a sale that took place in a parking lot, while the witnesses testified to a transaction that occurred in the bedroom of a co-conspirator's house. Cohens's motion provides no basis for believing there were not two separate transactions on that date. The State's witnesses and the tape-recorded drug transaction constitute sufficient evidence to support the conviction. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Any inconsistencies in the witnesses' testimony goes to the witnesses' credibility, a question that is resolved by the jury. *See State v. Sharp*, 180 Wis. 2d 640, 659, 511 N.W.2d 316 (Ct. App. 1993).

(July 5 Decision at ¶¶ 2, 7, 9.)

Cohens argues that the testimony of the witnesses contradicts a written statement from an informant. Specifically, Cohens contends that a police report containing the informant's statements indicates that a drug transaction took place in the parking lot with Peterson rather than with Cohens.

The standard of review applied by the court of appeals is essentially the same as that required by Supreme Court precedent. The court of appeals looked to see if the evidence was sufficient to support a conviction, and left the responsibility for resolving conflicts in witnesses' testimony to the trier of fact. This is essentially the same standard set forth in *Jackson* and *Schlup*.

Case 2:05-cv-00520-WEC   Filed 08/06/07   Page 25 of 30   Document 55

Furthermore, the court of appeals' determination was not contrary to or an unreasonable application of that standard. As noted by the court of appeals, Cohens was convicted on the basis of a tape recorded drug transaction between Cohens and a confidential informant, which tape recording was played for the jury. The police report does not contradict this evidence, as the police report refers to a drug transaction in a parking lot between Peterson and the informant, which was not the drug transaction for which Cohens was convicted. The informant testified at trial that the transaction with Cohens, for which Cohens was convicted, took place in a co-conspirator's bedroom. As noted by the court of appeals, evidence of other drug transactions on the date in question does not negate the possibility of there being multiple drug transactions on the same day. Cohens has not pointed to any testimony by the witnesses which directly contradicts the evidence of his drug transaction with the informant. Moreover, Cohens was convicted not merely on the basis of the witnesses' testimony, but also on the basis of the tape recording.

In sum, it was not unreasonable for the court of appeals to determine that a jury could reasonably find Cohens to have been involved in a drug transaction with the informant in the co-conspirator's bedroom. Thus, Cohens is not entitled to habeas relief based on his sufficiency of the evidence claim.

## F. Ineffective Assistance of Counsel

Cohens argues that he received ineffective assistance of counsel both at trial and on appeal. Cohens maintains that his trial counsel was ineffective because: (1) counsel did not further object to only receiving the number of convictions rather than the nature of the crimes for purposes of impeaching witnesses; (2) counsel did not object during the direct examination of witnesses Sheri Mitchell and Hollie Peterson regarding their speculation as to drug amounts; (3) counsel did not

26

vigorously argue against the use of a photo array of the defendants shown to the jury; and (4) counsel did not object to the jury instructions regarding the determination of the amount of drugs possessed. (Pet.'s Br. at 2-3.)

Cohens also argues that his appellate counsel was ineffective because he failed to bring a postconviction motion before the trial court alleging that Cohens' trial counsel had provided ineffective assistance for the reasons stated above.

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* clearly stated:

27

[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

The Wisconsin Court of Appeals addressed Cohens' argument in a footnote as follows:

Cohens also argues that his trial and postconviction counsel were ineffective for failing to raise these issues. Cohens' counsel were not ineffective and he suffered no prejudice from their failure to raise these issues because the issues have no merit. *See State v. Swinson*, 2003 WI App 45, ¶ 59, 261 Wis. 2d 633, 660 N.W.2d 12. The State also argues that these issues are barred by the successive postconviction motion rule set out in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 178, 517 N.W.2d 157 (1994). We agree that Cohens has not established good cause for his failure to raise these issues in his earlier postconviction motion and appeal, but will nonetheless address the merits.

(July 5 Decision at footnote 2).

In other words, the court of appeals concluded that neither of Cohens' counsel were ineffective because Cohens did not suffer any prejudice due to their failure to raise the issues cited by Cohens. In so ruling, the court of appeals did not explicitly cite *Strickland*. Instead, it cited *State v. Swinson*, 261 Wis.2d 633 (Ct. App. 2003), which in turn cited *Strickland*. Regardless, the court did apply the *Strickland* standard ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). This court, then, must determine whether the court of appeals' application of the *Strickland* standard was unreasonable. That is to say, in order for habeas relief to be granted, the court of appeals' decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

28

The court of appeals' determination that Cohens did not receive ineffective assistance of counsel was not an unreasonable application of *Strickland*. As discussed above, the alleged incomplete discovery regarding witnesses' criminal records and the alleged improper jury instruction did not cause Cohens to suffer prejudice. Moreover, as noted by the court of appeals, Cohens has not presented any explanation as to how the use of photos to identify the defendants caused him any prejudice:

> Cohens also complains that the prosecutor utilized photographs of him and other drug dealers. The prosecutor used the photos to identify parties, particularly because they used nicknames. Cohens's motion does not establish any prejudicial effect from the prosecutor's use of the photo and does not state why they would be inadmissible.

(July 5 Decision, ¶ 7).

The court of appeals also addressed the issue of the failure to object to the direct examination of witnesses Sheri Mitchell and Hollie Peterson regarding their testimony as to drug amounts:

> His co-conspirators' estimates of the weight of cocaine he possessed were admissible. They participated in cocaine trafficking and saw him with as much as ten times the 100 grams he was convicted of possessing. The motion does not establish any basis for precluding their testimony.

(July 5 Decision, ¶ 7).

Cohens has not presented any reason why Mitchell's or Peterson's testimony regarding drug amounts was inadmissible. They testified as to their personal observations of Cohens in possession of large amounts of drugs, which was directly relevant to the charges faced by Cohens. Given that the testimony of both witnesses was clearly admissible, Cohens was not prejudiced by his attorney's failure to object to such testimony.

29

In sum, the court of appeals' determination that Cohens received effective assistance of counsel was not an unreasonable application of *Strickland*. Consequently, Cohens is not entitled to habeas corpus relief based on the claimed ineffective assistance of counsel.

## V. CONCLUSION AND ORDERS

For all of the aforementioned reasons, Cohens has not demonstrated that he is entitled to federal habeas corpus relief on any of the asserted grounds. Cohens' petition for a writ of habeas corpus will therefore be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this <u>6th</u> day of August 2007, at Milwaukee, Wisconsin.


<u>/s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

30